VIRGINIA: IN THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH

RHEA CHRISTINE TURNER,

    Plaintiff,

v.                                      Case No. CL21-4223

DAVID E. ROSENBERG, M.D.,
Serve:   David E. Rosenberg, MD         TRIAL BY JURY DEMANDED
          601 Graydon Avenue, Apt. B
          Norfolk, VA 23507

    Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Rhea Christine Turner, by counsel, and for her Complaint against the Defendant, David Elliott Rosenberg, M.D., does hereby state as follows:

### PARTIES

1. Plaintiff Rhea Christine Turner ("Ms. Turner") is an individual over the age of 21 who is, presently, and was, at all times relevant hereto, a resident of Chesapeake, Virginia.

2. Defendant David Elliott Rosenberg ("Dr. Rosenberg") is an individual over the age of 21, who, upon information and belief, is, presently, and was, at all times relevant hereto, a resident of is a resident of Norfolk, Virginia.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter because the claims herein arose from injuries suffered by Ms. Turner at Portsmouth Community Health Center,

**Defendant's Exhibit A**

Inc. d/b/a Hampton Roads Community Health Center ("HRCHC") located in the City of Portsmouth, Virginia.

4. Venue is proper in this Court because the events or omissions giving rise to these claims occurred in the City of Portsmouth, Virginia.

## FACTUAL BACKGROUND

5. On September 21, 2020, Ms. Turner attended HRCHC as a patient for a follow-up exam from a recent hospitalization for kidney stones. Her appointment was with Dr. Rosenberg, a licensed physician practicing medicine specializing in internal medicine at HRCHC.

6. At the beginning of the examination, Dr. Rosenberg spoke with Ms. Turner about kidney stone prevention, informing her about causes and prevention. He then asked her if she had any other concerns. Ms. Turner asked him if she was overweight, to which he eyed her body up and down and informed her that her "shape was good".

7. Dr. Rosenberg then listened to Ms. Turner's lungs on the exam table. Once finished, Dr. Rosenberg instructed Ms. Turner to sit back down in the regular chair, which she did.

8. As the appointment seemed to be wrapping up, Dr. Rosenberg asked Ms. Turner about her general health and routine health tests, and informed her that certain tests needed to be performed at certain ages. Dr. Rosenberg told her that a mammogram was not performed until 50 unless there is a family history of breast cancer. Ms. Turner then informed him that she had already had a mammogram due

Turner v. Rosenberg, et al.
Complaint
Page 2

**Defendant's Exhibit A**

to a family history of breast cancer, that they had a concern about a spot but after a follow-up the spot had disappeared, so no further treatment was needed. Dr. Rosenberg then informed her that he needed to do a breast exam.

9. Ms. Turner sat back on the exam table while Dr. Rosenberg left to wash his hands. Dr. Rosenberg returned without any nurse or other person present in the room. He did not ask Ms. Turner to undress or put on a gown. Ms. Turner sat on the end of the exam table with her back straight and her knees bent. Dr. Rosenberg approached without any instructions, he just stared at Ms. Turner waiting for her to reveal her breasts.

10. Ms. Turner pulled her t-shirt above her bra, left in a circle around her neck almost like scarf. Dr. Rosenberg then instructed Ms. Turner to remove her breast from her bra. Following his instruction, Ms. Turner removed her left breast from her bra. Dr. Rosenberg immediately cupped his hand under her left breast, holding his thumb and index finger a few inches apart and moving them up and down the upper portion of her breast in a straight line stopping each time at her nipple.

11. After using this "technique" on the top portion of her breast, Dr. Rosenberg then used all five fingers in a grabbing position poking and squeezing her entire breast. Without saying a word, Dr. Rosenberg stopped and stared at Ms. Turner.

12. Ms. Turner felt very uncomfortable, exposed and in a state of shock. As Dr. Rosenberg continued to stare at her, she adjusted her bra to cover her left breast then removed her right breast. Dr. Rosenberg then cupped his hand under her right breast holding his thumb and index finger a few inches apart and moving them up and

Turner v. Rosenberg, et al.
Complaint
Page 3

**Defendant's Exhibit A**

down the upper portion of her breast in a straight line stopping each time at her nipple. Dr. Rosenberg then used all five fingers in a grabbing position poking and squeezing her entire breast.

13. Upon concluding the "breast exam", Dr. Rosenberg said "OK" then proceeded to talk about kidney stones again.

14. Dr. Rosenberg's "breast examination" was unlike any Ms. Turner had ever experienced before. There was no third-party present. She was not asked to derobe or change into a hospital gown. She was not asked to lie back and place her arm above her head. All of these measures were ones that had been taken at every other breast examination she had ever undergone.

15. Dr. Rosenberg's "breast exam" was nothing more than an excuse to grope and fondle Ms. Turner's breasts. If she had any lumps or troubling signs, Dr. Rosenberg would not have found them.

16. After being made aware of Dr. Rosenberg's inappropriate touching, HRCHC revised their policies regarding breast examinations.

17. Ms. Turner has suffered extreme emotional distress, anxiety and fear as a result of Dr. Rosenberg's groping. She felt violated and ashamed from a person – her doctor – who should be in a position of trust.

18. Ms. Turner's severe emotional distress manifested in physical symptoms of neck pain, headaches, insomnia, as well as mental and emotional symptoms, including flashbacks of the incident, anxiety, fear and intrusive thoughts and feelings.

Turner v. Rosenberg, et al.
Complaint
Page 4

**Defendant's Exhibit A**

Ms. Turner has undergone counseling to deal with her trauma resulting from Dr. Rosenberg's unwanted sexual touching.

## COUNT I - BATTERY

19. Plaintiff incorporates the allegations in Paragraphs 1 through 18 as if fully restated herein.

20. Although Ms. Turner consented to a breast exam, she did not consent to sexualized touching and fondling of her breasts by Dr. Rosenberg.

21. Dr. Rosenberg's sexual fondling of Ms. Turner's breasts was not justified nor excused by the ruse of his performance of a "breast exam", as the exam was not performed according to any professional standard of practice.

22. Dr. Rosenberg's sexual touching of Ms. Turner's breasts from a position of trust as her doctor, offended her dignity, as it would have offended any woman who had not consented to his sexual touching.

23. Dr. Rosenberg's insolent sexual touching of Ms. Turner exhibited a rude and arrogant lack of respect for Ms. Turner's dignity.

24. As a result of Dr. Rosenberg's unwanted sexual touching of her breasts, Ms. Turner has suffered substantial emotional trauma.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

25. Plaintiff incorporates the allegations in Paragraphs 1 through 24 as if fully restated herein.

26. Dr. Rosenberg's utilization of his position as Ms. Turner's treating physician to sexually fondle her breasts is outrageous and intolerable.

Turner v. Rosenberg, et al.
Complaint
Page 5

**Defendant's Exhibit A**

27. Dr. Rosenberg's behavior of pretending to perform a breast exam as an excuse to sexually grope Ms. Turner's breasts atrociously exceeds all possible bounds of decency.

28. Dr. Rosenberg's abuse of his necessary position of trust that Ms. Turner – as his patient – placed upon him, by sexually touching Ms. Turner's breasts is utterly intolerable in a civilized community.

29. Ms. Turner has suffered extreme emotional distress as a result of Dr. Rosenberg's outrageous behavior, including flashbacks, anxiety, intrusive thoughts and feelings, insomnia, as well as physical manifestation of her mental anguish in the form of neck pain and headaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in her favor and against Defendant David Rosenberg for his aforestated actions;

B. Award Plaintiff money damages for all pecuniary losses, including, but not limited to, legal expenses incurred and to be incurred;

C. Award Plaintiff money damages for Defendant's abusive and offensive battery resulting in Plaintiff's severe emotional harm in an amount not less than $495,000.00;

D. Award Plaintiff punitive damages in an amount not less than $350,000.00; and

Turner v. Rosenberg, et al.
Complaint
Page 6

**Defendant's Exhibit A**

E. Award Plaintiff any and all other relief that the Court deems just and appropriate, including leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Respectfully Submitted,

RHEA CHRISTINE TURNER

By: _____
Of Counsel

Matthew J. Weinberg, Esquire (VSB#88664)
Barry Randolph Koch, Esquire (VSB#16609)
INMAN & STRICKLER, PLC
575 Lynnhaven Parkway, Suite 200
Virginia Beach, VA 23452
(757) 486-7055
Fax: (757) 431-0410
mweinberg@inmanstrickler.com

Turner v. Rosenberg, et al.
Complaint
Page 7

**Defendant's Exhibit A**